UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

AGTECH SCIENTIFIC, LLC,           )
                                  )
          Plaintiff,              )          Civil No. 5:19-cv-00118-GFVT
                                  )
V.                                )
                                  )          **MEMORANDUM OPINION**
BLUE CIRCLE DEVELOPMENT, LLC,     )                    **&**
                                  )               **ORDER**
          Defendant.              )
                                  )

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Following various disputes arising from a supply agreement executed by the parties,
Plaintiff AgTech Scientific, LLC brought the present lawsuit.  Now pending before the Court is
Defendant Blue Circle Development, LLC's Motion to Dismiss.  [R. 11.]  For the reasons set
forth below, Defendant's Motion to Dismiss is **DENIED**.

**I**

**A**

Both Agtech and Blue Circle are part of the burgeoning hemp industry—AgTech acting
as an industrial hemp farming and processing company and Blue Circle as an industrial hemp
distributor.  [R. 1 at ¶¶ 6, 8.]  The two companies' business relationship began in late 2017.  *Id.*
at ¶ 9.  In August 2018, following extended preliminary dealings, the two companies executed a
Supply Agreement under which AgTech agreed to provide large amounts of industrial hemp to
Blue Circle.  *Id.* at ¶¶ 11–12.  In November 2018, issues arose with production and supply of the
hemp and Blue Circle filed a complaint against AgTech in state court in Fayette County,
Kentucky, which was subsequently removed to federal district court.  [*Id.* at ¶¶ 20–21; R. 1, Civil

No. 5:18-cv-00608-DCR.]  Shortly thereafter, the parties reached an agreement to settle the dispute, voluntarily dismissed the case, and executed an amendment to the Supply Agreement to formalize the settlement terms.  [R. 1 at ¶¶ 23–26.]

Following settlement, the parties proceeded with their business relationship under the Amended Supply Agreement.  *Id.* at ¶¶ 27–28.  Within weeks, issues again arose between the parties concerning the supply and distribution of the product.  *See id.* at ¶¶ 32–58.  As represented in AgTech's complaint, these issues were caused by Blue Circle's various failures to adequately perform under the Amended Agreement and resulted in significant financial loss to AgTech.  *See id.* at ¶¶ 40, 43, 44, 46, 56, 57.  On March 27, 2019, AgTech notified Blue Circle via written notice that it was terminating the Amended Agreement "effective immediately."  [*Id.* at ¶ 64; R. 11 at 3.]

The same day it terminated the Amended Agreement, AgTech filed suit against Blue Circle in this Court, asserting three claims: breach of contract, breach of the contractual duty of good faith and fair dealing, and unjust enrichment.  [*See* R. 1.]  Blue Circle then filed suit on April 23, 2019 against AgTech, setting forth numerous claims.  [*See* R. 1, Civil No. 5:19-cv-00179-CHB.]  The latter action was consolidated into the present case on August 13, 2019.[1]  [R. 10.]

Blue Circle now moves to dismiss the three claims against it on the grounds that (1) the first two claims fail as a matter of law because AgTech was the first to breach the Amended Agreement, and (2) the unjust enrichment claim is improper because the parties' relationship was governed by a valid and enforceable contract.  [R. 11 at 1.]  In response, AgTech maintains that

---

[1] Federal jurisdiction is proper in this case pursuant to 28 U.S.C. § 1332, as the amount in controversy is met and there is diversity of citizenship between the two parties.  [*See* R. 1 at ¶ 4; R. 1 at ¶ 3, Civil No. 5:19-cv-00179-CHB.]

(1) it did not breach the Amended Agreement, and (2) at this preliminary stage in litigation, the unjust enrichment claim is appropriately pled as an alternative means of relief.  [R. 14 at 1–2.]

**B**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the Plaintiff's complaint.  In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  A court, however, "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**II**

**A**

Blue Circle's Motion to Dismiss as to AgTech's first two claims is premised entirely on one contention: AgTech was the first to breach the Amended Agreement because it failed to terminate in accordance with the relevant termination provision.  Based on this alleged breach, Blue Circle argues that both the breach of contract claim, Count I, and the breach of the contractual duty of good faith and fair dealing, Count II, must fail.  However, after review, the Court finds that the allegations underlying Counts I and II are sufficient to avoid dismissal on this ground.

3

**1**

What is the potential impact on Counts I and II of AgTech's alleged breach?  On Count I, as part of its breach of contract claim, AgTech must show that it performed under the contract. *See Pinson Drilling, Inc. v. Williams*, No. 2013-CA-001599-MR, 2014 WL 4177424, at *2 (Ky. Ct. App. Aug. 22, 2014) (citing *Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. 1956)).  If AgTech did not perform and was the first to breach, then it cannot "complain if the other party thereafter refuses to perform." *Dalton*, 293 S.W.2d at 476.  Blue Circle is therefore correct in stating that a finding that AgTech was the first to breach the Amended Agreement would affect the viability of its breach of contract claim.

As to Count II, it is well established in Kentucky that plaintiffs may assert "independently-alleged causes of action for breach of contract premised on a theory of breach of the covenant of good faith and fair dealing." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 817 (E.D. Ky. 2013).  However, the viability of such a cause of action is tied closely to any "general breach of contract claims" brought by a plaintiff. *See id.*  For present purposes, it is sufficient to state that a finding that AgTech was the first to breach the Amended Agreement would cast serious doubt on the viability of its breach of the covenant of good faith and fair dealing claim.

**2**

 A determination concerning whether AgTech breached the Amended Agreement necessarily centers around the terms of that contract.  The interpretation and construction of a written contract are, of course, questions of law to be determined by the Court. *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016).  In the absence of ambiguity in the contract, the Court will interpret its terms "by assigning language its ordinary

4

meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). Here, the Court focuses its attention on one specific provision.

AgTech terminated the relationship between the parties under Section 8.2 of the Amended Agreement. [R. 1 at ¶ 64; R. 11 at 3.] In relevant part, Section 8.2 provides:

> Either party may terminate this Agreement forthwith by giving written notice to the other in any of the following events:
>
> (A) if the other party commits any material breach of any of the terms and conditions of this Agreement and fails to remedy that breach (if capable of remedy) within one month after notice from the other party requiring it to be remedied and giving full particulars of the breach.

[R. 1-1 at 19–20.] Blue Circle argues that Section 8.2 required AgTech to provide Blue Circle a month to cure any alleged material breaches before termination and that its failure to do so constituted a material breach. [R. 11 at 3.] AgTech disagrees with this interpretation. In AgTech's view, Section 8.2 allowed it to terminate the Amended Agreement effectively immediately "in the event of a material breach *incapable of remedy*." [R. 14 at 4 (emphasis added).] To this end, AgTech argues that Blue Circle's various failures to perform under the Amended Agreement prior to notice of termination "constitute[d] material breaches of the Amended Supply Agreement that were incapable of remedy, entitling AgTech to termination upon written notice pursuant to Section 8.2(A)." *Id.* at 4–5.

a

The first issue to address in light of the respective arguments is whether the notice and cure provision within Section 8.2 required AgTech to provide one month to cure where, as represented by AgTech, Blue Circle's prior breaches were incurable. Based on a plain reading of the provision and in view of the prevailing approach in other jurisdictions, the answer is no. Section 8.2 provides that either party may terminate by giving written notice where (1) the other

5

party commits a material breach and (2) fails to remedy that breach (if capable of remedy) within one month after notice. [R. 1-1 at 19–20.] As a matter of logic, if the breach cannot be remedied, then the second requirement allowing time to remedy is inapplicable. The parenthetical within the provision which states "if capable of remedy" offers strong textual support for this conclusion.

In the absence of Kentucky case law on this issue, the Court notes that other jurisdictions typically reach the same conclusion. Indeed, when faced with a similar question, a federal district court in the Northern District of Illinois noted that "the prevailing approach in other jurisdictions . . . is that a non-breaching party need not comply with a contractual notice and cure provision when the material breach is incurable." *Peoria Partners, LLC v. Mill Grp., Inc.* No. 15 C 6680, 2015 WL 8989675, at *7 (N.D. Ill. Dec. 16, 2015) (citing various cases in support of this finding). In this case, as noted above, the plain language of the notice and cure provision supports a finding in line with the prevailing approach. The Court holds that the termination provision of the Amended Agreement, Section 8.2, did not require the terminating party, here AgTech, to provide time to cure where a material breach was incurable.

**b**

The final issue in determining whether AgTech breached the Amended Agreement is whether Blue Circle's defaults were incurable breaches. If so, then under the above interpretation of Section 8.2, AgTech would be excused for its failure to provide one month notice before termination. Construing the facts in the light most favorable to the AgTech, Blue Circle's defaults, as set forth in AgTech's complaint, constituted incurable breaches.

AgTech alleges that Blue Circle committed two incurable material breaches. First, it points to Blue Circle's continued failure and inability to pay for product provided under the Amended Agreement. [R. 14 at 4.] And second, it points to Blue Circle's failure to maintain all

required licenses and permits necessary to conduct its business in compliance with the applicable state and federal law.  *Id.* at 4–5; R. 1 at ¶ 41, 43–44, 58, 60.]  As it specifically concerns this alleged second breach, AgTech claims the breach resulted in government seizure of product that, at the time, was property of AgTech.  [R. 14 at 5; R. 1 at ¶¶ 37, 46–47.]  In support of its argument that this breach was incurable, AgTech represents that the product remains in the custody of government authorities and, to its knowledge, "[i]t was not possible for Blue Circle to retroactively cure its violations of applicable law or unring the bell."  [R. 14 at 5.]

In response to AgTech's incurability claims, Blue Circle simply states that "there is no substantive allegation" in support of such claims and, as such, the "Court should ignore them." [R. 15 at 1.]  Accepting the allegations within AgTech's complaint as true, however, there is ample substance to support the claims of incurability.  Consequently, in the context of this Rule 12(b)(6) motion, the Court declines to find, as a matter of law, that AgTech committed a material breach when it terminated without providing Blue Circle an opportunity to cure.  Blue Circle's Motion to Dismiss is denied as to Counts I and II.

**B**

Lastly, the Court will consider Blue Circle's Motion to Dismiss as it concerns AgTech's claim for unjust enrichment, Count III.  Blue Circle argues dismissal of this claim is proper as unjust enrichment is unavailable under Kentucky law when an express contract controls and the parties agree the express terms of the Amended Agreement control in this case.  [R. 11 at 5.]  In response, AgTech acknowledges that its unjust enrichment claim is inconsistent with a breach of contract claim but asserts that at this stage "it may retain both . . . as alternative claims given the alternative pleading provisions of Rule 8(d)."  [R. 14 at 8.]

At first glance, it would appear that dismissal of Count III is warranted as Blue Circle is

correct in stating that "unjust enrichment is unavailable under Kentucky law when the terms of an express contract control." [R. 11 at 5 (citing *Furlong Dev. Co., LLC v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 40 (Ky. 2016).] As noted, both parties have conceded that the Amended Agreement is a valid contract between the two. [*See* R. 14 at 8.] Moreover, review of AgTech's complaint indicates that the disputes at issue are governed by the Amended Agreement. [*See* R. 1 at ¶ 33.] However, to dismiss this claim at the motion to dismiss stage would be premature.

The Sixth Circuit has held that, even in the face of a contract which both parties agree is valid, inconsistent equitable claims may remain as alternatives before the contract claim is concluded. *See Son v. Coal Equity, Inc.*, 122 F. App'x 797, 802 (6th Cir. 2004). The *Son* court noted that the course of litigation is "never certain" as, for example, there is always the potential that either the plaintiff or defendant will later repudiate earlier concessions or stipulations. *Id.* And, this Court has similarly acknowledged that in breach of contract cases, there is a "possibility that a trier of fact could find that not all the work was completed pursuant to the contract." *Boardman Steel Fabricators, Ltd. v. Andritz, Inc.*, Civil No. 14-2-GFVT, 2014 WL 2159743, at *2 (E.D. Ky. May 23, 2014). So, while it "goes without saying that the courts can and should preclude double recovery," at this stage the Court will allow Count III to remain as an alternative theory to AgTech. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980). Blue Circle's Motion to Dismiss is denied as to Count III.

### III

Blue Circle's attempt to dismiss the claims against it is unavailing. AgTech's complaint contains factual allegations in support of each claim which, accepted as true, succeed in stating claims to relief that are facially plausible. *Twombly*, 550 U.S. at 570. Accordingly, and the

Court being sufficiently advised, it is hereby **ORDERED** that Defendant Blue Circle

Development, LLC's Motion to Dismiss [**R. 11**] is **DENIED**.


     This the 24th day of April, 2020.

Gregory F. Van Tatenhove
United States District Judge